CUTLER-HAMMER, INC., Appellant, *v.* ARNOLD I. TROY et al., Doing Business as EASTERN METAL PRODUCTS Co., Respondents.

First Department, December 15, 1953.

*Sidney Holzer* of counsel (*Reich, Peller, Guadagno & Caine,* attorneys), for appellant.

*Alvin Miller* for respondents.

BREITEL, J. The court is in unanimous agreement that the determination on the complaint may not be disturbed. Disagreement exists only as to the finding in favor of defendants on the counterclaim. Consequently, attention will be directed to that phase of the case.

Defendants, the Troys, are manufacturers of electrical appliances requiring plastic handles and knobs. Plaintiff, Cutler-Hammer, manufactured these plastic parts for the Troys from dies and molds specially designed and manufactured by Cutler-Hammer in order to fabricate the parts. The dies and molds were billed to the Troys and paid for. On the other hand, Cutler-Hammer relied on documents which supported their claim to title to the dies and molds, but they were unsuccessful in fixing these documents as binding on the Troys. The counterclaim was based on the alleged conversion of the dies and molds by plaintiff, Cutler-Hammer. Each side has continuously claimed title to the dies and molds. Concededly Cutler-Hammer had possession properly of the dies and molds in order to make the parts for the Troys. It has been determined in this case that the Troys are the owners of the dies and molds. The remaining questions under the counterclaim are two, namely, whether the Troys established a conversion by Cutler-Hammer and whether the value of the dies and molds was properly established.

While Cutler-Hammer was manufacturing and selling the plastic parts to the Troys it raised its prices for the parts. The parties disagreed as to the right to do this. During the conversations the Troys asked for the return of the dies and molds in order that they might have the parts fabricated by other manufacturers. Cutler-Hammer refused to deliver the dies and molds. This was on September 22, 1948. It is undisputed that the Troys continued to order and buy the plastic parts made from these dies and molds from Cutler-Hammer. They did this, they say, because otherwise their production of completed electrical appliances would have been frustrated and their business irreparably impaired. As soon as they could, they say, the Troys ordered new dies and molds from another source and transferred their purchases of plastic parts to other manufacturers. This was in November, 1948.

The question is whether the September, 1948, demand and refusal are sufficient to ground a claim for conversion of the dies and molds.

The necessity for a demand and refusal to ground a claim for conversion arises when the one upon whom the demand must be made is in lawful possession of the property. Only thus can the continued possession be turned into an unlawful one. Once it is brought home to a possessor of property that another asserts a right to possession, and such possession is refused, there is no further office to be performed by a demand and refusal (*Employers' Fire Ins. Co.* v. *Cotten*, 245 N. Y. 102).

In this case the demand of September, 1948, was met with a refusal, not a conditional one, but an absolute one, presumably based on Cutler-Hammer's claim of title to the dies and molds which claim continued to the time of judgment. (See, e.g., *Bradley* v. *Roe*, 282 N. Y. 525, 532–533, as to the effect of a conditional refusal.) Consequently, there could be no valid need for any renewed demand. As stated in a different context of facts but with reference to the applicable principle: '' No precedent imposes such a useless procedure ''. (*Employers' Fire Ins. Co.* v. *Cotten, supra,* p. 104.)

Did then the Troys waive the conversion of the dies and molds retained by Cutler-Hammer by continuing to purchase plastic parts from Cutler-Hammer? Waiver is always a matter of intention. They did not intend to waive and only did what they could to avoid destruction of their appliance sales. They continued to order parts from Cutler-Hammer until they obtained a substitute set of dies and molds which they ordered in November, 1948. So the witness for the Troys testified:

'' I asked him to return the molds so I can give them to another factory. If he had returned my dies I would have given them to another factory and they would have been clear of me and I would have been clear of them. But he refused. He said he refused to return them; just let the thing stand as it was.''

'' Q. Well, then tell me, why did you have to go out and purchase new molds in November 1948? A. Because when Mr. Kayson was at my office he told me in no uncertain terms I was not going to get those dies back.

'' * * * When I heard that, I knew that I had a production to maintain after this contract was out. I certainly had to protect myself.''

Hence, there was a sufficient demand in this case. The refusal was unconditional, and therefore, dispensed with the need for

any further demand. There was no waiver, because the continued orders for parts were given out of necessity, caused by Cutler-Hammer, and without disclaimer by the Troys of ownership of the dies and molds. This is but just and realistic, as was well stated by the Court of Appeals, per O'Brien, J., in speaking of trover or other equivalent action: " Since the rule, regarded in many jurisdictions as unduly technical, requiring demand and refusal prior to the institution of a replevin action is based, according to the observations of judges in this State, upon the reason that one in lawful possession shall not have such possession changed into an unlawful one until he ' be informed of the defect of his title and have an opportunity to deliver the property to the true owner,' the rule does not apply, even within our jurisdiction, when the facts are that prior to the institution of the action, defendant had full information relating to her own defect in title and the identity of the true owner." (*Employers' Fire Ins. Co. v. Cotten, supra,* pp. 105–106.)

There remains the question of proof of value. There was no market for the dies and molds. Under such circumstances value may be proven by substitute methods. These include replacement value (*Scattergood v. Wood,* 14 Hun 269, affd. 79 N. Y. 263; 1 Clark on New York Law of Damages [1925], § 449; Abbott on Facts [5th ed., 1937], § 1069). There was such proof, and also opinion evidence by a witness. This was sufficient. The witness did not have to be an expert to any intensive degree (*Holsapple v. Rome, Watertown & Ogdensburgh R. R. Co.,* 86 N. Y. 275, 279; Richardson on Evidence [7th ed., 1948], § 524, subd. n.).

The judgment should be affirmed.

Dore, J. (dissenting). Plaintiff's claim for $942.75, a 10% claimed increase in price on shipments made by plaintiff after the letter of September 21, 1948, was properly dismissed. The handles in question in that claim were purchased under the order of March 23, 1948 — and, under the terms of that agreement, no understanding in any way modifying the conditions of the order was binding on defendants unless made in writing and signed by defendants' authorized representative. Defendants did not consent in writing or otherwise to the 10% increase and there is, therefore, no legal basis for plaintiff's claim for an additional $942.75.

With regard to defendants' counterclaim for $3,035 on alleged conversion of defendants' " molds ", defendants had the burden of proof to establish plaintiff's wrongful possession, defendants' proper demand and plaintiff's refusal and proper proof of

value at the time of the claimed conversion. The only demand testified to in the record is that made by Seymour Troy in September, 1948. But the record conclusively establishes that between that date and up to January 19, 1949, with defendants' knowledge and consent, plaintiff was using the molds in the making of handles that were delivered to and accepted by defendants. Thus, the fourteen invoices in evidence established that between those dates plaintiff made from the molds in question and delivered to defendants over 90,000 handles and defendants accepted the same. Obviously, while plaintiff, with defendants' consent, was using the molds and manufacturing the handles for defendants, plaintiff could not have been in wrongful possession of the molds and, therefore, there could have been no possible conversion until after the last delivery on or about January 19, 1949. Up to that date plaintiff, having concededly originally come into lawful possession, was in authorized possession of the molds. Defendants were required to show a proper demand and refusal after possession became wrongful. In the oral testimony there is no demand shown except as above indicated in September, 1948.

Plaintiff sued on October 3, 1949; defendants appeared and interposed an answer which admitted the orders, and the receipt of the merchandise but contested the price; and it was not until March, 1952 (a year-and-a-half after plaintiff's complaint had been served) that defendants belatedly amended their answer so as for the first time to allege the counterclaim in question claiming conversion by plaintiff. The notice to amend was not served until plaintiff had moved for partial summary judgment, which was granted. Assuming that the notice of this tardy amendment was a demand, there is no proof whatever in the record of the value of the molds at the time of such demand and refusal.

We think, too, that there is no proper proof of value of the chattels at the time and place of the alleged conversion. In fact, there is no proof whatever of value except as of September, 1948, when, as pointed out above, there could not have been wrongful possession by plaintiff.

The jury properly rejected any claim on Exhibit 3, plaintiff's so-called standard terms and conditions, which were never annexed to or delivered in connection with Exhibit G, the order here in question.

For the reasons stated, I dissent and recommend that the judgment appealed from should be modified so as (1) to affirm dismissal of plaintiff's complaint, and (2) to reverse the judg-

ment on the counterclaim in favor of defendants in the sum of $3,165; and (3) to dismiss the counterclaim, with costs in favor of plaintiff-appellant.

PECK, P. J., and BASTOW, J., concur with BREITEL, J.; DORE, J., dissents and votes to modify, in opinion in which COHN, J., concurs.

Judgment affirmed, with costs.