**FRINK AMERICA, INC., Plaintiff,**

v.

**CHAMPION ROAD MACHINERY LIMITED, Defendant.**

**Champion Road Machinery Limited, Counter–Claimant,**

v.

**Frink America, Inc.; and David Lowry, Counter–Defendants.**

**Frink America, Inc., Plaintiff,**

v.

**Champion Road Machinery Limited, Defendant.**

**Nos. 96–CV–486, 96–CV–1576.**

United States District Court, N.D. New York.

Aug. 6, 1999.

---

Harris Beach & Wilcox, LLP, Rochester, New York, Neal Slifkin, of counsel, for plaintiff.

Fish & Richardson, P.C., Boston, MA, Lawrence Kolodney, of counsel, MacKenzie Smith Law Firm, Syracuse, New York, Nancy Pontius, of counsel, for defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

Plaintiff Frink America, Inc. ("Frink America") filed its first action against defendant Champion Road Machinery Ltd. ("Champion") on March 22, 1996 alleging, *inter alia,* trademark infringement and dilution. In its Answer, defendant asserted a single counterclaim against plaintiff,

seeking cancellation of Frink America's registration of the "Rollover" mark. Plaintiff filed a second action against defendant on September 25, 1996 alleging: (1) misappropriation of trade secrets and conversion; (2) tortious interference with business relations; (3) trade dress infringement; (4) unfair competition under applicable federal and state law; and (5) copyright infringement under Canadian law. Plaintiff filed an Amended Complaint on October 29, 1997, adding an additional claim for breach of contract. In its Answer, defendant asserted counterclaims against Frink America and its president, Lowry, for patent and copyright infringement, misappropriation of trade secrets, conversion and unfair competition. In an order dated March 21, 1997, the Magistrate Judge consolidated the two actions. The Court assumes familiarity with its two prior decisions in this case. *See Frink America, Inc. v. Champion Road Machinery Ltd.*, 48 F.Supp.2d 198 (N.D.N.Y. May 11, 1999); *Frink America, Inc. v. Champion Road Machinery Ltd.*, 961 F.Supp. 398 (N.D.N.Y.1997).

In a Memorandum–Decision & Order dated May 11, 1999, this Court granted defendant's motion for summary judgment with respect to plaintiff's federal and state law trademark infringement, federal and state trademark dilution, copyright infringement, trade dress infringement, breach of contract, misappropriation of trade secrets, tortious interference with business relations and federal unfair competition claims. Defendant's summary judgment motion was denied, however, with respect to plaintiff's state unfair competition and conversion claims on the ground that defendant failed to address those claims in its Memorandum of Law in support of its motion for summary judgment. *See Frink America*, 48 F.Supp.2d 198, 208–09. Thereafter, defendant requested, and this Court denied, reconsideration and/or reargument and leave to file additional briefing regarding that portion of the Court's May 11, 1999 Memorandum–Decision and Order which denied de-

fendant's motion to dismiss plaintiff's state unfair competition and conversion claims. *See* Letter of Lawrence K. Kolodney, dated May 18, 1999. The Court, however, treated defendant's request to file additional briefing as a motion for leave for an extension of time within which to file dispositive motions, and extended the period of time during which the parties may file dispositive motions until July 19, 1999.

Champion presently moves this Court for summary judgment with respect to Frink America's remaining state law claims sounding in conversion and unfair competition.

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under .FED.R.CIV.P. 56(c), if there is no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex*

*Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

### B. Conversion Claim

In its Amended Complaint, plaintiff bases its conversion claim on the following allegation:

Champion has converted and misapplied Frink's INTELLECTUAL PROPERTY and trade secrets, and wrongfully manufactured products identical to those of Frink by use of such INTELLECTUAL PROPERTY and trade secrets. Champion's conduct has been intentional and malicious.

Amended Compl. at ¶ 36.

A plain reading of the Amended Complaint reveals that its conversion claim rests on its misappropriation of trade secrets claim. Essentially, the conversion claim is premised on defendant's alleged misappropriation of protected trade secrets consisting of drawings, jigs and fixtures which belonged to Frink America but were used by Champion to manufacture snowplows in direct competition with Frink America. *See* Pl.Mem. of Law at 6.

"[C]onversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another." 23 N.Y.JUR.2D, *Conversion* § 1 (1982); *see also Songbyrd, Inc. v. Estate of Grossman*, 23 F.Supp.2d 219, 222 (N.D.N.Y.1998); *Bunge Corp. v. Manufacturers Hanover Trust Co.*, 37 A.D.2d 409, 325 N.Y.S.2d 983, 988 (1st Dep't 1971), *aff'd* 31 N.Y.2d 223, 335 N.Y.S.2d 412, 286 N.E.2d 903 (1972). More recently, courts have held that the plaintiff must prove that the unauthorized possessor has acted to exclude the rights of the owner. *See Songbyrd, Inc.*, 23 F.Supp.2d at 222 (quoting *Key Bank of N.Y. v. Grossi*, 227 A.D.2d 841, 642 N.Y.S.2d 403, 405 (3d Dep't 1996)). Furthermore, "[i]f possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property." *White v. City of Mount Vernon*, 221 A.D.2d 345, 633 N.Y.S.2d 369, 370 (2d Dep't 1995) (citing *Bernstein v. La Rue*, 120 A.D.2d 476, 501 N.Y.S.2d 896, 898 (2d Dep't 1986)).

Under New York law, actions for conversion have been generally limited to tangible property:

Ordinarily an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible, and not for indefinite, intangible, and incorporeal species of property.

23 N.Y.Jur.2d *Conversion* § 11 (1982) (citing *Stern v. Kaufman's Bakery, Inc.*, 191 N.Y.S.2d 734, 735 (1959)).

■ However, as plaintiff points out, while " 'an action for conversion will not normally lie when it involves intangible property, an action involving infringement of property rights by virtue of misappropriating tangible property ... should properly be considered an action to recover for conversion of that property.' " Pl.Mem. of Law at 7 (quoting *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (1983)).

In *Sporn*, the New York Court of Appeals held that a conversion claim may properly be brought when based on a song's master recording, which it classified as tangible property. *See Sporn*, 58 N.Y.2d at 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324 ("[Although] plaintiff's intangible property rights which flow from his claimed ownership of the master recording are involved ... that is not sufficient to convert a claim for recovery of losses sustained because a tangible piece of property was sold into an action involving purely intangible property."). Like *Sporn*, the instant case involves a transaction which did not consist of purely intangible property. Rather, it involved tangible property—drawings, jigs and fixtures. Accordingly, plaintiff's claim is properly considered one for conversion. *See id.*

### 1. Property Was in the Public Domain

■ As previously noted, in its Amended Complaint, plaintiff bases its conversion claim on a claim of misappropriation of trade secrets. *See* Amended Compl. at ¶ 36. In finding that the intellectual property at issue did not merit trade secrecy protection, this Court held:

[T]he information contained in plaintiff's engineering and production drawings, and jigs and fixtures involve public matters and, therefore, do not constitute a protectible trade secret. Additionally, plaintiff did not treat these items in a manner consistent with a trade secret. Specifically, plaintiff acknowledges that it readily shared "technology and exchanged engineering drawings" with Frink Canada and FEI prior to Champion's purchase of FEI's assets ... [and] failed to safeguard its process and equipment from public disclosure by "tak[ing] rudimentary precautions" to prevent its employees or competitors from acquiring familiarity with the production designs and equipment for its snowplow equipment.

*Frink America*, 48 F.Supp.2d 198, 207–08 (quotations omitted). Because plaintiff premised its conversion claim on a claim of misappropriation of trade secrets—and that claim was dismissed—it naturally follows that its conversion claim cannot be maintained. *See Blank v. Pollack*, 916 F.Supp. 165, 175 (N.D.N.Y.1996) (dismissing conversion claim where a related misappropriation of trade secrets claim was dismissed).

Furthermore, the Court notes that the drawings, jigs and fixtures at issue were sold by Ernst & Young, Ltd., the court-appointed receiver for Frink Environmental, Inc. ("FEI"), an entity which held the assets of Frink America. Significantly, plaintiff does not allege that he informed Ernst & Young that the disputed property belonged to Frink America. As a result, Champion acquired Frink America's assets through a court approved bankruptcy sale.

### 2. Demand and Refusal

■ It is well established that, where defendant has gained possession of items through legal means, as in the case of a court approved bankruptcy sale, the plaintiff alleging conversion must show it demanded the return of such items and that the defendant refused to do so. *See White*, 633 N.Y.S.2d at 370; *Agawam*

*Trading Corp. v. Mayer Malbin Co.,* 37 A.D.2d 946, 325 N.Y.S.2d 757, 757–58 (1st Dep't 1971); *Apex Ribbon Co. v. Knitwear Supplies, Inc.,* 22 A.D.2d 766, 253 N.Y.S.2d 643, 644 (1st Dep't 1964) ("The rule that one who comes lawfully into possession of property cannot be charged with conversion thereof, until after a demand and refusal, is too well established to justify extended discussion.") (citations omitted); *Cutler–Hammer, Inc. v. Troy,* 283 A.D. 123, 126 N.Y.S.2d 452, 454 (1st Dep't 1953).

In *Agawam Trading,* the defendant gained possession of goods through legal means—a levy made by the Sheriff. The court then dismissed plaintiff's conversion claim because the record was "barren of any facts to show a refusal to return the property." 325 N.Y.S.2d at 757. Similar to the plaintiff in *Agawam Trading,* Frink America fails to show that any demand for the return of property was made, let alone refused. Rather, much of plaintiff's memorandum of law focuses on the distinction, if any, between intellectual property and intellectual property rights. Plaintiff stops short, however, of showing a demand was made and refused, stating only that Lowry (Frink America's President) informed Church (Champion's President) that "intellectual property belonging to Frink America was in the possession of Frink Environmental." Pl.Mem. of Law at 10. Accordingly, with no showing by plaintiff of any refusal by defendant to return property in legal possession of defendant, plaintiff's conversion claim must be dismissed.

### C. Unfair Competition Claim

Champion next moves for summary judgment with respect to plaintiff's state law claim of unfair competition. Specifically, in its Amended Complaint, plaintiff alleges that:

Champion's conversion and misappropriation of Frink's INTELLECTUAL PROPERTY and machine tools, tortious interference with Frink's business relations, its infringing use of the Frink trade dress and material misrepresentations regarding Frink constitute unfair competition. . . .

Amended Compl. at ¶¶ 54–56.

A plain reading of plaintiff's allegations reveals that its unfair competition claim is based on its federal trade dress infringement claim and state law claims of conversion, misappropriation of trade secrets and tortious interference with business relations. Significantly, plaintiff conceded its trade dress infringement claim, see *Frink America,* 48 F.Supp.2d 198, 204–05, and this Court dismissed plaintiff's misappropriation of trade secrets and tortious interference with business relations claims, see *id.* at 206–07, 208–09. Similarly, plaintiff's conversion claim was addressed and dismissed earlier in this decision. *See supra,* at 209–210. Thus, based solely on the allegations raised in the Amended Complaint, plaintiff's unfair competition claim cannot be maintained. An analysis of the elements of an unfair competition claims yields the same conclusion.

■ " 'Although at one time the law of unfair competition was limited to claims that one party had attempted to pass off his goods as those of another party, unfair competition is now held to encompass a broader range of unfair practices which may be generally described as a misappropriation of the skill, expenditures, and labor of another.' " *Anacomp, Inc. v. Shell Knob Servs., Inc.,* 1994 WL 9681, at * 13 (S.D.N.Y. Jan.10, 1994) (quoting *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 662 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980)). New York courts have also held that a claim of unfair competition may be maintained where a party misappropriates a property right belonging to another for one's own commercial advantage. *See Anacomp,* 1994 WL 9681, at *13 (citing *Roy Export Co. Estab. of Vaduz v. Columbia Broad. Sys., Inc.,* 672 F.2d 1095, 1105 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)).

■ "[T]he gravamen of a claim of unfair competition is a bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of trademark or trade name or by exploitation of proprietary information or trade secrets." *Eagle Comtronics, Inc. v. Pico Prods., Inc.*, 256 A.D.2d 1202, 682 N.Y.S.2d 505, 506 (4th Dep't 1998); *see also Capitaland Heating and Cooling Inc. v. Capitol Refrigeration Co.*, 134 A.D.2d 721, 521 N.Y.S.2d 202, 203 (3d Dep't 1987). In addition to bad faith, plaintiff must show proof of public confusion or the likelihood of confusion in distinguishing between defendant's and plaintiff's products. *See Diversified Mktg., Inc. v. Estee Lauder, Inc.*, 705 F.Supp. 128, 131 (S.D.N.Y.1988).

### 1. Bad Faith Misappropriation

■ Plaintiff contends that defendant unlawfully retained and used plaintiff's engineering drawings, jigs and fixtures to manufacture snowplows identical to Frink America's snowplows. *See* Pl.Mem. of Law at 2. This contention, standing alone, is insufficient to support a claim of a bad faith misappropriation on the part of Champion. Specifically, Champion purchased FEI's assets (which allegedly included the drawings, jigs and fixtures at issue) from Ernst & Young, FEI's receiver, in a court approved bankruptcy sale. Moreover, the record does not reflect that plaintiff communicated to FEI's receiver its purported claim of ownership to these assets. Plaintiff maintains, however, that in a conversation between Lowry and Church, it was "understood" that "Frink America's intellectual property included engineering drawings and manufacturing jigs and fixtures used to manufacture snow plows." Pl.Mem. of Law at 10. Assuming, *arguendo*, that such a conversation had in fact taken place, it remains that Lowry never actually demanded the return of these assets regardless of what Champion understood or acknowledged.

In alleging bad faith misappropriation by defendant, plaintiff contends that "[h]ad Champion designed its own products for the unique U.S. market, or even reverse engineered Frink America's products, it would have been more than a year before Champion could have entered the market and directly competed with Frink America." Pl.Mem. of Law at 5. Plaintiff's mere conjecture on how long it should take a company to enter a new market falls far short of "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Kerzer v. Kingly, Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) ("Conclusory allegations, conjecture and speculation, however, are insufficient to create a genuine issue of fact."); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) ("The nonmoving party may not rely on conclusory allegations or unsubstantiated speculation."). The Court further notes that plaintiff appears to suggest with this conclusory statement that its rights to these drawings, jigs and fixtures are entitled to protection. However, this Court, in dismissing plaintiff's earlier misappropriation of trade secret claim, found that the drawings, jigs and fixtures involved public matters and did not constitute a trade secret. *See Frink America*, 48 F.Supp.2d 198, 206. Therefore, plaintiff has failed to provide sufficient evidence to support a claim of bad faith misappropriation.

### 2. Likelihood of Confusion

Plaintiff also fails to satisfy the likelihood of confusion element of an unfair competition claim. The Court addressed this issue in connection with its dismissal of plaintiff's trademark infringement claim. *See Frink America*, 48 F.Supp.2d 198, 211–12. In applying the well-established *Polaroid* factors, the Court found that "[a]t most, plaintiff has shown the possibility, rather than the probability of confusion." *Id.* The Court also found no likelihood of confusion because the snowplows produced by defendant "are targeted for a specialized class of consumers who possess a high level of sophistication and who are not likely to be confused by the different snowplows marketed by the parties." *Id.*

at 212–13. Because plaintiff has failed to provide sufficient evidence demonstrating bad faith and confusion, the Court grants defendant's motion for a summary judgment with regard to the unfair competition claim.

### III. CONCLUSION:

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED, dismissing plaintiff's state unfair competition and conversion claims.

**IT IS SO ORDERED.**