**I.B.E.W LOCAL NO. 910 WELFARE, ANNUITY, AND PENSION FUNDS, by John LOVE, as Fund Manager; the Watertown Electrical Joint Apprenticeship and Training Fund, by Terry Henry, as Chairman; National Electrical Benefit Fund, by John Grau and Jack Moore, as Trustees; and International Brotherhood of Electrical Workers Local Union No. 910, by George Intschert, as Business Manager, Plaintiffs,**

**v.**

**DEXELECTRICS, INC., Defendant.**

**No. 99–CV–692.**

United States District Court, N.D. New York.

May 16, 2000.

Blitman & King LLP, Syracuse, NY, Jennifer A. Clark, Jacqueline B. Jones, of counsel, for Plaintiffs.

Slye & Burrows, Watertown, NY, Christina E. Stone, of counsel for Defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, District Judge.

Plaintiffs commenced the instant action against Defendant Dexelectrics, Inc. pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* to collect delinquent fringe benefit contributions, deductions, interest, liquidated damages, costs and disbursements, and attorneys' fees. Specifically, Plaintiffs move pursuant to FED. R. CIV. P. 56 for a grant of summary judgment against Defendant in the amount of $43,552.50 representing: (1) $25,292.59 in unpaid fringe benefit contributions and deductions; (2) $3,671.79 in interest; (3) $5,692.44 in liquidated damages; and (4) $8,895.68 in attorneys' fees and costs. *See* Affidavit of Jacqueline B. Jones, Esq. ("Jones Aff.") at ¶ 7. In connection with their request for monetary damages, Plaintiffs seek post-judgment interest as provided under 28 U.S.C. § 1961(a). *See* Notice of Motion at 2. Plaintiffs also seek an order directing Defendant to: (1) produce, within ten (10) days following service of the Court's order, its remittance reports and payroll records evidencing hours worked by its employees for the period February 2000 through the date of this order for the purpose of conducting an audit; (2) pay any delinquent amounts uncovered by the remittance reports and audit, including fringe benefit contributions, deductions, interest, liquidated damages, audit fees, and attorneys' fees and costs; (3) perform its obligations to Plaintiffs under the agreements by which it is bound; specifically, to timely furnish Plaintiffs the required monthly remittance reports and payments; and (4) refrain from incurring additional delinquencies in amounts owed, or to become owing in the future. *See* Jones Aff. at 5–6.

## I. Background

Defendant Dexelectrics, Inc. is a party to a collective bargaining agreement with Local Union No. 910 (the "Union"). *See* Affidavit of George Intschert ("Intschert Aff.") at Ex. A ("Shop Agreement"). Dexelectrics and the Union executed a Letter of Assent that bound each party to the terms and conditions of the Shop Agreement. *See id.* The current Shop Agreement is in effect for the period June 1, 1999 through May 31, 2001.[1] *See id.* at § 1.01. The Shop Agreement provides, *inter alia,* that Defendant make monthly fringe benefit contributions and deductions to various Union funds based on the number of hours worked by each bargaining unit employee covered by the Shop Agreement. *See generally* Art. IV, §§ 4.01–.08; Pl. Stmt. of Material Facts at ¶¶ 6–7. Defendant is also required to remit monthly remittance reports and fringe benefit contributions and deductions no later than the fifteenth day of the following month. *See* Shop Agreement at § 4.07–.08; Intschert Aff. at ¶ 8; Pl. Stmt. of Material Facts at ¶ 8.

As a signatory to the Shop Agreement, Dexelectrics is also bound by the terms and conditions of various Agreements and Declarations of Trust for the Union's Welfare, Annuity, Pension and Training Funds (collectively the "Trust Funds"), *see* Shop Agreement at § 4.10–.11; *see also* Affidavit of John Love ("Love Aff.") at ¶¶ 3–6 and Exs. A–D, the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund ("NEBF"), *see* Shop Agreement at § 7.01; *see also* Love Aff. at ¶ 7 and Ex. E, and the Collections Policy for the Local 910 Welfare, Annuity and Pension Funds ("Collections Policy"). *See* Shop Agreement at § 4.10–.11; *see also* Love Aff. at ¶¶ 10–13 and Ex. F; Intschert Aff. at ¶¶ 9–12. Pursuant to the terms and conditions of the Shop Agreement, Trust Funds and Collections Policy, Defendant's failure to timely remit amounts owed may result in a finding of

---

1. Plaintiffs have submitted similar Shop Agreements covering the periods August 1, 1997 through May 31, 1999 and June 1, 1994 through May 31, 1996. *See* Intschert Aff. at Ex. A.

liability against Defendant for delinquent contributions and deductions and the imposition of interest, liquidated damages, and attorneys' fees and costs. *See* Pls. Stmt of Material Facts at ¶ 11; Shop Agreement at § 4.09; Collections Policy at § 1.

Based on Defendant's records and remittance reports, Plaintiffs allege that Dexelectrics: (1) *owes* $12,131.55 for delinquent fringe benefit contributions and deductions for the period July 1998 through March 1999, exclusive of interest, liquidated damages and attorneys' fees and costs, *see* Pls. Stmt. of Material Facts at ¶ 13; Love Aff. at ¶ 15; Intschert at ¶ 12; (2) *untimely remitted* $5,661.46 for delinquent contributions and deductions and $167.35 in interest for the period February 1998 through April 1998, *see* Pls. Stmt. of Material Facts at ¶ 14; Love Aff. at ¶ 18; (3) *untimely remitted* $28,052.20 for delinquent contributions and deductions and $1,433.91 in interest for the period January 1995 through June 1995, *see* Pls. Stmt of Material Facts at ¶ 15; Love Aff. at ¶ 21;[2] and (4) *owes* $13,161.04 for delinquent contributions and deductions for the period April 1999 through February 2000, exclusive of interest, liquidated damages and attorneys' fees and costs, *see* Pls. Stmt. of Material Facts at ¶ 16; Love Aff. at ¶ 24; Intschert Aff. at ¶ 14.

Thus, Plaintiffs seek a total of $25,292.59 ($12,131.55 + $13,161.04) for delinquent fringe benefit contributions and deductions owed by Defendant. In connection with that amount, Plaintiffs also seek interest of $3,671.79, *see* Love Aff. at ¶¶ 16, 25

($2,494.33 + $1,068.87); Intschert Aff. at ¶¶ 13, 15 ($78.14 + $30.45), liquidated damages of $5,692.44, *see* Love Aff. at ¶¶ 16, 19, 22, 25 ($1,248.30 + $579.81 + $2,516.43 + $1,347.90), and attorneys' fees and costs of $8,895.68, *see* Jones Aff. at Ex. D.

## II. Discussion

■ Because the Court is presented with an unopposed motion for summary judgment, the Court assumes the facts derived from the Complaint to be true and for the purposes of the instant motion, "adopts [P]laintiff[s]' recitation of the facts underlying this dispute."[3] *Onondaga County Laborers' Health, Welfare, Pension, Annuity and Training Funds v. Sal Masonry Contractors, Inc.*, 1992 WL 75051, at *10 n. 1 (N.D.N.Y. Apr.7, 1992) (McCurn, C.J.) (*"Onondaga County"*). Accordingly, Plaintiffs' "uncontested assertions in its [7.1(a)(3)] Statement are deemed admitted for purposes of deciding whether summary judgment should be granted." *Id.* at *3; *see also* N.D.N.Y.L.R. 7.1(a)(3). Notwithstanding Defendant's failure to submit any opposition papers to Plaintiffs' motion for summary judgment, the Court has independently examined Plaintiffs' moving papers to determine whether a grant of summary judgment and an award of monetary damages and injunctive relief against Defendant is warranted. Accordingly, in deciding the instant motion, the Court will apply the well-settled standards applicable to motions for summary judgment that have

---

**2.** In his affidavit, John Love, Fund Manager for Local Union 910, states that Defendant's untimely payment for this period was $26,399.33. *See* Love Aff. at ¶ 21. This amount, however, is not included in the calculation of total delinquent fringe benefit contributions and deductions sought by Plaintiffs in connection with the instant motion.

**3.** In connection with the instant motions, Plaintiffs filed a certificate of service certifying that the present motion for summary judgment was served on Defendant on March 24, 2000. *See* Certificate of Service (Docket No. 12) (attached to Notice of Motion for

Summary Judgment). Under Local Rule 7.1(b)(1)(B), Defendant was required to serve its opposition papers on Plaintiffs within twenty-one (21) days from the date the motion was initially served, or by April 14, 2000. *See* N.D.N.Y.L.R. 7.1(b)(1)(B) (1999). Following Defendant's failure to serve any opposition papers or seek an extension to serve such papers, Plaintiffs filed the instant motion with the Court on April 26, 2000. *See generally* Notice of Motion. To date, Defendants have not filed any opposition papers with the Court in connection with the instant motion.

been set forth in prior decisions by this Court. *See Dyke v. McCleave,* 79 F.Supp.2d 98, 102–03 (N.D.N.Y.2000); *Frink Am., Inc. v. Champion Road Mach. Ltd.,* 62 F.Supp.2d 679, 681–82 (N.D.N.Y. 1999); *Emma v. Schenectady City Sch. Dist.,* 28 F.Supp.2d 711, 717–18 (N.D.N.Y. 1998), *aff'd,* 199 F.3d 1322 (1999) (Table).

## A. Applicable Legal Standards

■ Pursuant to 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." In *Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310 (2d Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990), the Second Circuit recognized only two valid defenses to a suit for contributions due under an employee benefit plan:

> (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable). Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.

*Id.* at 314 (internal citations omitted). More recently, the Second Circuit held that the employer's obligation to make contributions under a collective bargaining agreement may be excused "if the [a]greement, by its own terms, does not require continuing contributions absent the continuing existence of a condition precedent." *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 654 (2d Cir.1994).

■ Having failed to submit opposition papers in connection with the instant motion, Defendant does not contest that it is required to make fringe benefit contri-butions and deductions under the Shop Agreement, Trust Funds and Collections Policy. Moreover, neither of the affirmative defenses raised by Dexelectrics in its Answer "fit[ ] within the scope of those which courts have recognized as valid." *Onondaga County,* 1992 WL 75051, at *5 (footnote omitted). First, Dexelectrics' defense that it is not a party to these agreements is unavailing in light of the fact that Defendant is a signatory to the Shop Agreement, *see* Answer at ¶¶ 46–48, and has previously remitted contributions to the various funds. *See, e.g., New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.,* 891 F.Supp. 81, 86 (N.D.N.Y.1995), *aff'd,* 92 F.3d 127 (1996). Furthermore, Dexelectrics does not contend that it was excused from making contributions because a condition precedent to that obligation remains unfulfilled. *See generally* Answer at ¶¶ 45–53. Second, Dexelectrics' defense that its obligations under the collective bargaining agreement should be "modified" based on "severe financial difficulties," *id.* at ¶¶ 49, 51, is not a recognized defense to nonpayment of contributions by an employer under a valid collective bargaining agreement. *See DeVito,* 38 F.3d at 653–54; *Benson,* 907 F.2d at 314; *Onondaga County,* 1992 WL 75051, at *5. Accordingly, "absent some proof by [D]efendant that it does not owe these funds, [P]laintiff[s][are] entitled to payment." *Onondaga County,* 1992 WL 75051, at *5.

■ In support of their motion for summary judgment, Plaintiffs also submitted affidavits from: (1) George Intschert, Business Manager for Local Union 910 and Trustee for the various Trust Funds and (2) John Love, Fund Manager for the various Trust Funds and Collection Agent for the National Electrical Benefit Fund. *See* Docket Nos. 15 and 16. These affidavits also include copies of the Shop Agreement, Trust Funds and Collections Policy executed by the parties. The uncontested affidavits allege that Defendant is bound by the terms and conditions in the Shop

Agreement (incorporating by reference the Trust Funds, NEBF and Collections Policy), which obligate Defendant to, *inter alia*, timely report the number of hours worked by employees covered under the Shop Agreement and to remit fringe benefit contributions and certain deductions made from its employees' wages to various Union funds. *See* Intschert Aff. at ¶¶ 3–9; Love Aff. at ¶¶ 8–12. In addition, Defendant is obligated to pay liquidated damages, interest, audit fees, and attorneys' fees and costs in connection with efforts made to recover delinquent contributions and deductions. *See* Intschert Aff. at ¶ 10; Love Aff. at ¶ 13. The *uncontested* allegations and factual assertions contained in these affidavits are sufficient to establish the absence of a genuine issue of material fact regarding: (1) Defendant's obligations under the Shop Agreement, Trust Funds, NEBF, and Collections Policy with respect to making timely contributions and deductions to the various Funds and the production of monthly remittance reports; and (2) the amounts cited by Plaintiffs as being delinquent under these agreements. Accordingly, Plaintiffs are entitled to summary judgment with respect to delinquent fringe benefit contributions and deductions owed by Defendant.

## B. Monetary Damages

Having awarded summary judgment in favor of Plaintiffs on their claim under 29 U.S.C. § 1145, the Court must determine the amount of monetary damages to be awarded under 29 U.S.C. § 1132(g)(2). Section 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>   (i) interest on the unpaid contributions, or

> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2) (West 1999).

### (1) Unpaid Contributions and Deductions

■ To support their calculation of delinquent contributions and deductions, Plaintiffs submit affidavits of George Intschert and John Love, both of whom have oversight responsibility over the Union's Funds and, thus, have personal knowledge regarding the amount of delinquent contributions and deductions claimed by Plaintiffs. Moreover, Plaintiffs submitted copies of remittance reports and accounting records supporting amounts claimed for the period July 1998 through March 1999, *see* Love Aff. at Exs. G, H; Intschert Aff. at Exs. C, D (delinquent contributions and deductions of $11,445.30 + $686.25, or $12,131.55 in total), and for the period April 1999 through February 2000, *see* Love Aff. at Ex. L; Intschert Aff. at Ex. D (delinquent contributions and deductions of $12,486.68 + $674.36, or $13,161.04 in total). Thus, in total, Plaintiffs are entitled to an award of $25,292.59 for unpaid contributions and deductions owed by Defendant.

### (2) Interest

Plaintiffs next seek a total of $3,671.79 in interest in connection with its First and

Fourth Causes of Action. *See* Love Aff. at ¶¶ 16, 25; Intschert Aff. at ¶¶ 13, 15.

■ Under the Collections Policy effective December 1, 1998, the rate of interest on delinquent fund contributions is 18% per annum or 1 ½ % per month. *See* Love Aff. at Ex. F, § 1(b) (Local Union 910 Collections Policy). The Restated Employees Benefit Agreement and Trust separately provides that interest on delinquent contributions to the National Electrical Benefit Fund is 10% per annum. *See id.* at Ex. E, § 6.9.3. These rates were reflected in the interest calculations contained in the remittance reports and accounting records provided by Plaintiffs. *See* Love Aff. at Exs. H, L ($2,494.33 + $1,068.87 or $3,563.20 in total); Intschert Aff. at Exs. C, D ($78.14 + $30.45 or $108.59 in total). After reviewing the dates and interest rates contained in the records attached to the Intschert and Love Affidavits, the Court finds that Plaintiffs have applied the appropriate interest rate for the applicable periods in calculating the amount of interest owed by Defendant.[4] Accordingly, Plaintiffs are entitled to the $3,671.79 of interest sought in connection with the instant motion.

### (3) Liquidated Damages

Plaintiffs next seek liquidated damages totaling $5,692.44 for unpaid *and* untimely paid contributions and deductions due under the fund agreements.

■ In addition to the interest accrued on unpaid contributions provided for in section 1132(g)(2)(B), Plaintiffs are also entitled, pursuant to section 1132(g)(2)(C), to the greater of the interest or liquidated damages provided for under the plan in an amount not in excess of twenty (20) percent of the unpaid contributions. Under the Collections Policy effective December 1, 1998, liquidated damages are equal to 10% of the outstanding contributions. *See* Love Aff. at Ex. F, § 1(b). The Restated

Employees Benefit Agreement and Trust separately provides that liquidated damages are equal to an amount up to 20% of the delinquent contributions to the National Electrical Benefit Fund. *See id.* at Ex. E, § 6.9.2. These rates were reflected in the liquidated damage calculations contained in the remittance reports and accounting records provided by Plaintiffs. *See* Love Aff. at Exs. H, I, J, L ($1,248.30 + $579.81 + $2,516.43 + $1,347.90 or $5,692.44 in total). After reviewing the dates and interest rates contained in the records attached to the Love Affidavit, the Court finds that Plaintiffs have applied the correct percentages for the applicable periods in calculating the amount of liquidated damages owed by Defendant. Accordingly, Plaintiffs are entitled to the $5,692.44 for liquidated damages sought in connection with the instant motion.

### (4) Attorneys' Fees and Costs

In accordance with 29 U.S.C. § 1132(g)(2)(D) and the Shop Agreement, *see* Shop Agreement at § 8.04, Trust Funds, *see generally* Trust Funds § 5, NEBF, *see* NEBF § 6.9.5, and Collections Policy, *see* Collections Policy § 1(e), Plaintiffs seek attorneys' fees and costs of $8,895.68 in connection with efforts to collect delinquent funds owed by Defendant during the period November 1997 through March 2000.

### (a) Applicable Legal Standards

■ An application for attorneys' fees in an ERISA action is governed by 29 U.S.C. § 1132(g)(1). "Ordinarily, the decision is based on five factors: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common

---

4. In accounting records supplied by Plaintiffs, $108.59 of interest was calculated at a rate of 9% per annum. *See* Intschert Aff. at Exs. C, D.

benefit on a group of pension plan participants." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987). "Although an award of attorney's fees is discretionary, the Second Circuit has held that 'attorney's fees may be awarded to the prevailing party under ERISA in the absence of some particular justification for not doing so.'" *Owen v. Soundview Fin. Group, Inc.*, 54 F.Supp.2d 305, 326 (S.D.N.Y.1999) (quoting *Birmingham v. SoGen–Swiss Int'l Corp. Retirement Plan*, 718 F.2d 515, 523 (2d Cir. 1983)), *aff'd*, 208 F.3d 203 (2d Cir.2000) (Table).

▮▮▮▮ Once the court determines that award of attorneys' fees is appropriate, it uses the "lodestar" method for to calculate the fee award. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir.1989), *cert. denied*, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990); *Onondaga County*, 1992 WL 75051, at *6. Under this method, the court "multipl[ies] 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763–64 (2d Cir.1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The lodestar figure is to be based upon current, prevailing market rates. *See id.* at 764 (quoting *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The amount figured into the lodestar includes "the number of hours claimed by plaintiffs' attorneys that are supported by time records, that are not excessive or duplicative, and that do not reflect work done only in connection with unrelated claims on which plaintiffs did not succeed." *Id.; see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999). There is a strong presumption that this lodestar figure represents a reasonable fee. *See Quaratino*, 166 F.3d at 425. The party applying for attorneys' fees has the burden "to establish both the reasonable rate and the number of hours worked." *Onondaga County*, 1992 WL 75051, at *6.

### (b) Whether An Award of Attorneys' Fees is Appropriate

In their fee application, Plaintiffs' counsel alleges that the attorney hours incurred in this action were due to: "(1) the defendant's failure to timely remit fringe benefit contributions and deductions; and (2) the defendant's refusal to cooperate with the plaintiffs in connection with the satisfaction of this debt." Jones Aff. at ¶ 10. Moreover, in their Memorandum of Law, Plaintiffs argue that a fee award is justified based on the merits of Plaintiffs' motion, the deterrence effect an award would have on other employers who fail to remit contributions in accordance with their contractual obligations, and the common benefit shared by the plan participants as a result of the instant action. *See* Pls. Mem. of Law at 20. Because Defendant failed to file opposition papers to the instant motion, it does not contest Plaintiffs' allegations regarding the bases for Plaintiffs' fee application.

▮▮▮ As an initial matter, the Court notes that the Shop Agreement, Trust Funds, NEBF and Collections Policy specifically provide for the award of attorneys' fees and costs in actions seeking delinquent contributions and deductions. *See* Shop Agreement at § 8.04; NEBF at § 6.9.5; Collections Policy at § 1(e). Moreover, after carefully reviewing the facts and circumstances of the present case against the factors enumerated above, the Court finds that an award of attorney fees is warranted. First, Plaintiffs allege that Defendant failed to cooperate with them in an effort to resolve the instant dispute. *See* Jones Aff. at ¶ 10. Thus, on the facts before the Court, Defendant apparently did little to resolve the instant dispute. Second, although Defendant's affirmative defense of financial difficulties tends to establish its inability to pay attorneys' fees, denial of attorneys' fees in this case might encourage other employers

who are allegedly experiencing financial distress to similarly cease making pension contributions due under a valid collective bargaining agreement. The Court further notes that Plaintiffs allege that Defendant has untimely remitted a portion of the delinquent contributions and deductions owed, which tends to show an ability to satisfy an award of attorneys' fees. *See* Pls. Stmt. of Material Facts at ¶¶ 14–15. Third, Defendant's principal defense of financial difficulty is not a recognized defense to its obligation to make timely contributions and deductions under the Shop Agreement, Trust Funds and NEBF. Thus, a review of the merits favors Plaintiffs. Fourth, the delinquent contributions and deductions Plaintiffs seek to recover in the instant action will benefit the plan participants as a whole. Accordingly, based on Plaintiffs' contractual entitlement to attorneys' fees and after carefully weighing the facts and circumstances of the instant case against the factors set forth in *Chambless*, the Court finds that an award of attorney fees is warranted.

### (c) Reasonable Rates

Plaintiffs seek attorneys' fees of $8,618.50, representing a total of 6.7 hours of partner time, 55.8 hours of experienced associate time, and 1.3 hours of paralegal time. In their computations, Plaintiffs' counsel used hourly rates ranging from $161.00 to $168.00 for partner time, $128.00 to $136.00 for experienced associate time, and $88.00 to $91.00 for paralegal time. *See* Jones Aff. at Ex. D.

As this Court recently discussed in *TM Park Ave. Assocs. v. Pataki*, 44 F.Supp.2d 158, 167 (N.D.N.Y.1999), the applicable hourly rate depends on an attorney's professional experience. Thus, as a general rule, attorneys with significant experience and numerous years of practice are entitled to reimbursement at the hourly rate of $175.00; attorneys with four or more years of experience at the hourly rate of $125.00; and newly-admitted attorneys practicing less than four years at the rate of $100.00 per hour.[5] *See TM Park Ave. Assocs.*, 44 F.Supp.2d at 167; *see also Carroll v. DeBuono*, 48 F.Supp.2d 191, 194 (N.D.N.Y.1999). "Although *TM Park* awarded paralegal time at $50.00 per hour based on the fact that plaintiff failed to substantiate that a higher rate was appropriate, *see TM Park Ave. Assocs.*, 44 F.Supp.2d at 167, this Court finds that $65.00 per hour is the prevailing rate for paralegal work in this district." *Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc.*, 63 F.Supp.2d 211, 214–15 (N.D.N.Y.1999). Accordingly, the Court will apply these rates in calculating the experienced associate and paralegal portions of Plaintiffs' attorneys' fee award. With respect to attorney Clark, however, the Court will use the range of hourly rates provided by Plaintiffs in their fee application.[6]

### (d) Reasonable Hours

As previously noted, Plaintiffs' fee application is unopposed by Defendant. However, after independently reviewing the reasonableness of Plaintiffs' counsel's time records, the Court finds the hours incurred to be reasonable in light of the nature and duration (November 1997 to March 2000) of the instant action. Accordingly, the Court will calculate the lodestar amount based on the hours included in Plaintiffs' fee application.

### (e) Lodestar Calculation

Applying the prevailing hourly rates for this district for experienced associate and

---

5. Although *TM Park* dealt with claims brought pursuant to 42 U.S.C. § 1983, the Court finds that the hourly attorney rates set forth in *TM Park* are applicable to fee applications brought in connection with ERISA actions.

6. In their fee application, Plaintiffs state that attorney Clark has been admitted to the bar since 1982 and has extensive experience in the area of ERISA actions. *See* Jones Aff. at ¶ 9 n. 1.

paralegal time and the range of hourly rates provided by Plaintiffs for attorney Clark's time, the lodestar calculation is as follows:

| | | |
|---|---|---|
| Partner: | 3.6 hours * $161.00/hour = | $ 579.60 |
| | 2.1 hours * $163.00/hour = | $ 342.30 |
| | 1.0 hour * $168.00/hour = | $ 168.00 |
| Experienced Associate: | 55.8 hours * $125.00/hour = | $6,975.00 |
| Paralegal | 1.3 hours * $65.00/hour = | $ 84.50 |
| **Total Lodestar Amount:** | | **$8,149.40** |

The Court also finds the costs requested by Plaintiffs to be reasonable under the circumstances. Accordingly, the Court grants Plaintiffs' motion for attorneys' fees in the amount of $8,149.40 and costs in the amount of $277.18.

### (5) Production of Remittance Reports and Payroll Records and Injunctive Relief

In addition to monetary damages, Plaintiffs request that Defendant produce, within ten (10) days following service of this order, remittance reports and payroll records in order for Plaintiffs to conduct an audit and verify the amount of delinquent contributions and deductions owed by Defendant. Plaintiffs also seek an order enjoining Defendant from incurring any further delinquencies in amounts owed and directing Defendant to perform its obligations to Plaintiffs. *See* Pls. Mem. of Law at 10–17.

■ Pursuant to 29 U.S.C. § 1132(g)(2)(E), a court shall award a Fund which prevails in an action brought under section 1145 "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E) (West 1999). Accordingly, Plaintiffs may seek injunctive relief as a remedy in a successful ERISA action seeking nonpayment of contributions. *See, e.g., Beck v. Levering,* 947 F.2d 639, 641 (2d Cir.1991) (stating that permanent injunctions are available as a remedy under ERISA), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); *Mason Tenders Dist. Council Welfare Fund v. Logic Constr. Corp.,* 7 F.Supp.2d 351, 359 n. 45 (S.D.N.Y.1998); *King v. Nelco Indus., Inc.,* 1996 WL 629564, at *1 (E.D.N.Y. Oct.23, 1996); *Chartier v. J & F Management Corp.,* 1992 WL 367115, at *4 (S.D.N.Y. Nov.25, 1992).

■ The applicable agreements expressly authorize Plaintiffs to conduct an examination of Defendant's employment and personnel records relevant to the administration of the various funds and require Defendants to produce such records on a timely basis.

The Shop Agreement requires Defendant to timely remit contributions and remittance reports to Plaintiffs. *See* Shop Agreement at § 4.08. The Trust Funds separately provide that the Trustees may request production of the employer's records in connection with the administration of the various funds. *See* Love Aff. at Ex. A, Art. IV, § 4 (Welfare Fund); Ex. B at Art. IV, § 4 (Pension Fund); Ex. C. at Art. IV, § 4 (Annuity Fund). Similarly, the NEBF authorizes the Trustees to request personnel related records for covered employees and to conduct an audit of the pertinent employment and payroll records "whenever such examination is deemed necessary or advisable by the Trustees." NEBF at § 6.7.1 (included in Love Aff. at Ex. E). The Collections Policy, which is incorporated by reference in the Shop Agreement, *see id.* at § 4.11, authorizes Plaintiffs to conduct an audit "whenever such examination is deemed necessary or advisable by the Trustees." Collections Policy at § 3(a).

The affidavit testimony also supports a granting of the relief requested by Plaintiffs. In his affidavit, George Intschert states that production of past remittance reports and payroll records is necessary because "plaintiffs do not know the extent of defendant's delinquency and the amount of unpaid fringe benefit contributions, deductions, interest, [and] liquidated damages . . . due since February 2000." Intschert Aff. at ¶ 21. Intschert further states that production of such records is necessary because Defendant is "continuing to incur delinquencies with the plaintiffs." *Id.* at ¶ 22. Mr. Love raises similar concerns in his affidavit. Specifically, he states that an audit is necessary in light of Defendant's continuing delinquencies with the Funds, *see* Love Aff. at ¶ 30, and because without the remittance reports and payroll records, "the Funds do not know the identity of the employees on whose behalf contributions are due and cannot credit the employees for hours worked." *Id.* at ¶ 34. Based on Defendant's past conduct, Plaintiffs also seek to enjoin Defendant from incurring further delinquencies with respect to contributions and deductions owed under its agreements with Plaintiffs. *See id.* at ¶ 38; Intschert Aff. at ¶¶ 22–23.

In light of Defendant's past delinquencies, as detailed in the papers submitted by Plaintiffs in connection with the instant motion, and the express authorization contained in the various agreements requiring Defendant to produce pertinent employment and personnel records upon request of the Trustees for the purposes of conducting an audit, the Court finds that Plaintiffs have met their burden in seeking an injunction and, thus, are entitled to the production of records and injunctive relief requested. *See, e.g., Onondaga County,* 1992 WL 75051, at *9.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs are awarded unpaid contributions and deductions in the amount of $25,292.59; and it is further

**ORDERED**, that Plaintiffs are awarded interest in the amount of $3,671.79; and it is further

**ORDERED**, that Plaintiffs are awarded liquidated damages in the amount of $5,692.44; and it is further

**ORDERED**, that Plaintiffs are awarded attorneys' fees and costs in the amount of $8,149.40 and $277.18, respectively; and it is further

**ORDERED**, that Plaintiffs are entitled to postjudgment interest on the outstanding balances detailed above in accordance with 28 U.S.C. § 1961(a); and it is further

**ORDERED**, that Defendant is directed to produce, within ten (10) days of the date of this Memorandum–Decision & Order, remittance reports and payroll records detailing the hours worked by its employees for the period February 2000 through the date of this Order for the purposes of conducting an audit; and it is further

**ORDERED**, that Defendant is directed to timely furnish the required monthly remittance reports and contributions to Plaintiffs; and it is further

**ORDERED**, that Plaintiffs' request for injunctive relief is **GRANTED**, enjoining Defendant from incurring further delinquencies with Plaintiffs.

**IT IS SO ORDERED.**